### WILLIAM R. DAVIS *vs*. WILLIAM E. MALONEY, Sheriff.

1. FRAUDULENT CONVEYANCES—CONSIDERATION—CHANGE OF POSSESSION—GIFTS.

*Rev. Code* 1852, amended to 1893, *p.* 526, *c.* 63, § 4, providing no sale of any chattels shall be good in law, except against the seller, or shall change the property therein, unless a valuable consideration shall be paid, or in good faith secured, and unless the chattels shall be actually delivered to the buyer, as soon as conveniently may be after the sale, applies to a gift.

2. FRAUDULENT CONVEYANCES—POSSESSION OF PROPERTY OF ANOTHER.

*Rev. Code* 1852, amended to 1893, *p.* 526, *c.* 63, § 4, as to fraudulent conveyances, has no application to the case of one who buys chattels and places them in the hands of another to keep for him, so as to make them subject to the claims of the creditors of the one so keeping them.

3. WITNESSES—CREDIBILITY—INCONSISTENT STATEMENTS.

While, as regards the question whether property, levied on by defendant as the property of plaintiff's father, belonged to plaintiff, statements of the father, a few days before, on the occasion of other levies, that it was his property, may not be considered, they may be considered in determining the credit to be given the father's testimony that it belonged to plaintiff.

*(April 23, 1912.)*

PENNEWILL, C. J., and BOYCE and RICE, J. J., sitting.
*George M. Jones* and *William M. Hope* for plaintiff.
*Richard R. Kenney* and *J. Hall Anderson* for defendant.
Superior Court, Kent County, April Term, 1912.

ACTION OF REPLEVIN (No. 24, February Term, 1910), for
property taken under execution process.

The facts fully appear in the charge.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—This is an action brought by William
R. Davis, the plaintiff, against William E. Maloney, sheriff, the
defendant, to recover the value of certain personal property which
the plaintiff claims belonged to him, but which was unlawfully
seized and taken by the defendant on the eighteenth day of
October, 1909.

This property, the plaintiff contends, consisted of one horse,
one York carriage and one set of harness which had been given to
him by his father Charles H. Davis; six cows, with three calves
by their sides, and two brood sows and four shoats, which the
plaintiff claims had been bought or obtained by him from other
persons, and which his father was to keep for him pursuant to an
arrangement made between them.

The defendant admits the taking and sale of said property,
but claims that it was the property of the plaintiff's father, Charles
H. Davis, and that it was seized and sold by virtue of an execu-
tion in his hands in favor of John W. Fennimore, Jr., against said
Charles H. Davis and Annie B. Davis, his wife, and a levy made
thereunder on the eighteenth day of October, 1909.

In order for the plaintiff to succeed in this action of replevin,
you must be satisfied from the evidence that he was the owner of
the property in question on October 18, 1909, when the levy was
made by the defendant on the Fennimore execution, and on
November 22, 1909, the time when the writ of replevin was issued
by the plaintiff.

The important and crucial question, therefore, for you to
decide, is whether the property was or was not the property of

William R. Davis, the plaintiff, at the time it was seized and replevied. If you are not satisfied from the testimony that it was, or if you believe that it was the property of Charles H. Davis at the time the levy was made on the Fennimore execution, the plaintiff cannot recover.

The plaintiff must show to your satisfaction, not only that he was the owner of a horse, carriage and harness, and of certain cattle and hogs, but that such was the identical property that was seized by the defendant and replevied by the plaintiff. In other words, the identification must be such as will enable you to say that it was the same property.

The defendant contends that the alleged agreement between the plaintiff and his father respecting the horse, carriage and harness was not a *bona fide* gift, but a mere device or arrangement to defraud the creditors of the latter, and keep them from taking his property for the payment of his debts. And the defendant further contends that if the horse, carriage and harness were in truth and fact given by the father to the son without any actual intent to defraud the creditors of the father, nevertheless the gift was void and of no effect because the possession of the said property remained with the father even after the plaintiff had left his father's home, and up to the time it was taken by the defendant on the Fennimore execution.

[1] The law of this state, known as the statute of frauds, *Revised Code*, *p.* 526, provides as follows:

"Sec. 4. No sale, whether with or without bill of sale, of any goods or chattels, within this state, shall be good in law (except as against the vendor), or shall change, or alter, the property in such goods and chattels, unless a valuable consideration for the same shall be paid, or in good faith secured to be paid, and unless the goods and chattels sold shall be actually delivered into the possession of the vendee, as soon as conveniently may be after the making of such sale. And if such goods and chattels, so sold, shall afterward come into and continue in the possession of the vendee, the same shall be liable to the demands of all his creditors."

Whether the transaction is called a sale or gift, we think the statute equally applies.

It is undisputed that no valuable consideration was paid or secured to be paid by the plaintiff to his father for the horse, carriage and harness, and that they were not actually delivered into the possession of the plaintiff, but continued in the possession of the father up to the time of the seizure by the defendant.

We hold, therefore, and so instruct you, that while the agreement between the plaintiff and his father was good and binding upon them, it did not change or alter the property in such goods and chattels so far as the creditors of the father were concerned; that the defendant, as sheriff, had a right to seize the same for the payment of the father's debts, and that the plaintiff cannot recover in this action for the taking of the horse, carriage and harness.

And, independent of said statute, we may say, that the question of fraud or bad faith is always open; and fraud vitiates every sale or agreement. And this refers not to the moral, but the legal character of the act. If the purpose of selling or giving property be to cover it merely, so as to shield it from creditors; that purpose, though it might be prompted even by benevolent motives, is an illegal purpose, and cannot be carried out by the aid of courts of justice. *Pennington v. Chandler*, 5 *Harr.* 394; *Wilkins v. Wilson*, 1 *Marv.* 404; 41 *Atl.* 76.

[2]  But, gentlemen of the jury, nothing we have said respecting the statute of frauds has any application or reference to the property which the plaintiff bought of persons other than his father, viz., the cattle and hogs.

The defendant, however, insists that while the plaintiff may have bought cattle and hogs from other persons as he claims to have done, it is not clearly and sufficiently shown by the testimony that such cattle and hogs, or their increase were the same that were seized by the defendant and replevied by the plaintiff.

It is for you to say from all the testimony whether this property has been sufficiently identified, that is, whether you are satisfied from the evidence that the cattle, calves, sows and shoats levied on by the defendant and replevied by the plaintiff, were

the same that the latter described as belonging to him, and bought or obtained as he detailed from the witness stand.

If you believe they were the same, the plaintiff would be entitled to recover the value thereof unless you believe from the testimony that he parted with his title to such property by giving it to his father. After all, the important question for you to determine, as we have before remarked, is whether the plaintiff was the owner of the property in question on the twenty-second day of November, 1909, the time when the writ of replevin was issued. If he was not the owner at that time he cannot recover, no matter to what other person or persons the property may have then belonged. But if he was at that time the owner of all, or any part of such property, he would be entitled to recover from the defendant for the unlawful taking of the same; and your verdict should be for such sum as you believe from the testimony the cattle and hogs actually owned by the plaintiff at the time they were replevied, and taken by the defendant, and replevied by the plaintiff, were reasonably worth. But in no event can you find in favor of the plaintiff for a greater number of cattle and hogs than you find from the evidence he actually owned at the time the writ of replevin was issued.

[3] There were three levies admitted in evidence, marked "Exhibits B, C, and D," made by the defendant on executions issued two days prior to the making of the Fennimore levy, and, as he claims, made upon statements or representations of Charles H. Davis and his wife as to the ownership of all the property levied on. One of these levies was made on an execution against Charles H. Davis in favor of Virginia Benn his daughter; another was made on an execution against Annie B. Davis, wife of Charles H. Davis, in favor of Virginia Benn; and the other was made on an execution against Charles H. Davis in favor of Laura Johnson, sister of Charles H. Davis.

But we wish to say that these levies were admitted not for the purpose of showing property in Charles H. Davis or his wife, but as a fact or circumstance which might be considered by the jury in determining what credit and strength should be given to their testimony that the plaintiff was the owner of the property in dispute; and also in deciding whether the alleged agreement

Verdict.

made by the father with his son, the plaintiff, was a *bona fide* gift or a fraudulent cover or device. The alleged agreement, however, is no longer material, after the instruction we have given you respecting the horse, carriage and harness. You have heard the testimony of the witnesses, and the law as stated by the court, and it is for you to say whether the plaintiff is entitled to recover, and if so, how much. When the testimony is conflicting in any case, it is the duty of the jury to reconcile it if they can. But if they cannot do so, they should accept and be govened by that testimony which they believe to be the most reliable, having regard to the intelligence and apparent fairness of the witnesses, their relations to one another, and to the parties to the suit, their bias or interest in the result of the case if any they have, their opportunities and ability to know and remember the things whereof they testified, and any other facts and circumstances which may aid in determining the truthfulness of their testimony.

Verdict for defendant.